## LOWER VEIN COAL COMPANY *v.* INDUSTRIAL BOARD OF INDIANA ET AL.

### APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF INDIANA.

No. 186. Argued January 27, 1921.—Decided February 28, 1921.

1. There is a sufficient distinction between coal mining and other hazardous employments to justify a state legislature in applying its Workmen's Compensation system to the one compulsorily, while leaving it permissive or not applying it at all as to the others. Pp. 146, 149.

2. Neither in this respect nor in applying to all employees of coal mine operators, whether engaged in hazardous work or not, does the Indiana law invade the rights of a coal company under the Fourteenth Amendment. *Id.*

3. Nor does such law offend §§ 21 and 23 of the Indiana Bill of Rights, in failing to distinguish between those employees of coal operators who are and those who are not in the hazardous part of the business. P. 149.

4. The policy of workmen's compensation acts, unlike that of employers' liability acts, goes beyond the mere element of hazard, and admits of a broader range of reasonable classification in the public interest. P. 150.

Affirmed.

THE case is stated in the opinion.

*Mr. William H. Thompson* and *Mr. Henry W. Moore,* with whom *Mr. Samuel D. Miller* and *Mr. Frank C. Dailey* were on the brief, for appellant.

*Mr. E. M. White* and *Mr. John A. Riddle*, with whom *Mr. Ele Stansbury*, Attorney General of the State of Indiana, *Mr. U. S. Lesh*, Assistant Attorney General of the State of Indiana, and *Mr. Harold A. Henderson* were on the brief, for appellees.

MR. JUSTICE MCKENNA delivered the opinion of the court.

Appellant, the Lower Vein Coal Company, is a corporation of the State of Indiana. The Industrial Board of Indiana is a board created by an Act of the General Assembly of Indiana, approved March 8, 1915, known as "The Indiana Workmen's Compensation Act." The personal appellees are members of the board.

This suit was brought by the Coal Company to enjoin the Industrial Board, the Governor and Attorney General of the State, from enforcing in any manner § 18 of the Workmen's Compensation Act of the State, as amended by the General Assembly in 1919, from asserting that plaintiff is compelled to operate under the Compensation Act, from hearing any claim for compensation asserted by any employee of the plaintiff so long as plaintiff elects not to come within the provisions of the act, from making any award to any injured employee, or his or her dependents, during such time, and from doing any other act or thing prejudicial to the rights of the plaintiff, so long as it elects not to be bound by the act.

The grounds for this relief were set forth in a complaint of considerable length to which the defendants separately and severally answered. After trial of the issues thus presented, the District Court entered its decree dismissing the bill for want of equity. This appeal was then prosecuted.

The Compensation Act is very long and declares its purposes to be to promote the prevention of industrial

accidents; to cause provision to be made for adequate medical and surgical care for injured employees in the course of their employment; to provide methods of insuring the payment of such compensation; to create an Industrial Board for the administration of the act and to prescribe the powers and duties of such board; to abolish the State Bureau of Inspection, and provide for the transfer to the Industrial Board of certain rights, powers and duties of the Bureau of Inspection.

The original act passed in 1915 was elective and left employer and employee the option of rejecting its terms with certain exceptions. It was amended in 1917, and railroad employees engaged in train service were exempted from its provisions.

The amendment of 1919 made the act mandatory as to all coal mining companies of the State and its political divisions and as to municipal corporations. To all other employers the act remains permissive. They may elect to operate under its provisions. Railroad employees engaged in train service are not within them.

The sole question presented is the validity of § 18 as amended, that is, the compulsion of coal companies to the operation of the act, while to other employers it is permissive, or does not apply at all. The grounds of attack upon it are that it violates the due process clause and the equal protection of the laws clause of the Fourteenth Amendment of the Constitution of the United States and §§ 21 and 23 of the Indiana Bill of Rights. Specifically, the question is, as the Coal Company expresses it, "whether the Indiana General Assembly may pass a general compensation law, applicable to all employers within the State, and make it compulsory as to one hazardous employment, and elective as to all others (many equally as hazardous) except railroad employees in train service to which it does not apply at all." And the insistence is "that such a classification rests upon no

sound or just basis," and hence is inimical to the Constitution of the United States and that of Indiana.

The principle of law involved and the power of a State to distinguish and classify objects in its legislation have been too often declared, too abundantly and variously illustrated, to need repetition and we pass immediately to the contention of counsel. It is that the act is addressed to hazardous employments, and where in employments that character exists, sameness exists, and a law which ignores such sameness discriminates in its operation and offends the Constitution of the United States. It may be that the Coal Company does not contend for so broad a principle but may assert protection by a comparison of its business with other businesses equally hazardous, or even more hazardous than coal mining, and that necessarily the exemption from the law of the businesses so compared taints it with illegal discrimination. To support and justify the comparison, statistics of accidents are given in the complaint, and in the number of accidental injuries coal mines are made to run fifth. Notwithstanding those other companies may go in or out of the law—coal mining companies must stay.

The answer replies with counter assertions and statistics and a detail of the methods of coal mining and what those methods cause of accidents to the miners, and to these are added, it is said, the risks that come from the generation of noxious and explosive gases. And there is evidence in the case addressed to the conflicting statistics and the conclusions to be deduced from them which occupies about ninety-three pages of the record. In this evidence, occupations and businesses are compared with estimates of accidents in each, and their character, severity and consequences, fatal and otherwise. There is also testimony of the wages that mine workers get and of their prosperity, and that they have a legal department and paid attorneys. And there is averment and testimony.

of two organizations of mine owners who retain officers and attorneys to defend suits and secure releases from personal injury claims.

The length and character of the reports and tables of statistics preclude summary. It may be conceded that different deductions may be made from them, but they and the controversies over them and what they justified or demanded of remedy were matters for the legislative judgment, and that judgment is not open to judicial review. Indeed, there may be a comprehension of effects and practical influences that can not be presented to a court and measured by it, and which it may be the duty of government to promote or resist, or deemed advisable to do so. Degrees of policies, if they have bases, are not for our consideration, and the bases cannot be judged of by abstract speculations or the controversies of opinion. Legislation is impelled and addressed to concrete conditions deemed or demonstrated to be obstacles to something better, and the better, it may be, having attainment or prospect in different occupations (we say occupations as this case is concerned with them) dependent in the legislative consideration upon their distinctions in some instances, upon their identities in others, and, as the case may be, associated or separated in regulation. And this is the rationale of the principle of classification and of the cases which are at once the results and illustrations of it.

There are facts of especial pertinence that make the principle apply in the present case and justify the legislation of the State. That coal mining has peculiar conditions has been quite universally recognized and declared. It has been recognized and declared by this court and is manifested in the laws of the States where coal mining obtains. There is something in this universal sense and its impulse to special legislation—enough certainly to remove such legislation from the charge of being an unreasonable or arbitrary exercise of power.

The action of the Coal Company indicates that it considered the coal business distinctive. Other businesses, though according to the Coal Company's assertion as hazardous as coal mining, accepted the law; the Coal Company and other coal companies rejected it. To this, of course, the coal companies were induced by comparison of advantages, but the inducements to reject the legislation might well have been the inducement to make it compulsory. At any rate, there is, taking that and all other matters into consideration, ground for the legislative judgment expressed in the amendment of 1919 under consideration, that is, § 18 as amended. And the fact is to be borne in mind that there are 30,000 employees in the State engaged in coal mining.

The Coal Company further contends that the law includes within its terms all the Company's employees whether engaged in the hazardous part of its business or not so engaged. In other words, it asserts that the conditions of those who work undergound may justify the law but do not justify its application to those who work above ground. The contention has a certain speciousness but cannot be entertained. It commits the law and its application to distinctions that might be very confusing in its administration and subjects it and the controversies that may arise under it to various tests of facts; and this against the same Company. The contention is answered in effect by *Booth* v. *Indiana,* 237 U. S. 391.

Appellant invokes against the law §§ 21 and 23 of the Indiana Bill of Rights which respectively provide that no man's property or particular services shall be taken without just compensation, nor, except in the case of the State, without compensation being first assessed and tendered, nor shall there be a grant of privileges or immunities to any citizen or class of citizens that shall not equally belong to all citizens.

Appellant, however, while admitting, indeed citing

cases to show, that the classification of objects of legisla-
tion under the Bill of Rights of the State has the same
bases of power and purpose as the classification of ob-
jects under the Fourteenth Amendment of the Constitu-
tion of the United States, yet contends that the Supreme
Court of the State has strictly construed the Bill of Rights
of the State, and has observed a precision in classification
not required or practiced in the application of the Four-
teenth Amendment. Citing for this *Indianapolis Traction
Co.* v. *Kinney*, 171 Indiana, 612, 617; *Cleveland, etc., Ry.
Co.* v. *Foland*, 174 Indiana, 411; *Richey* v. *Cleveland, etc.,
Ry. Co.*, 176 Indiana, 542, at p. 558.

These cases were constructions of the Employers'
Liability Act of the State. It was held in *Indianapolis
Traction Co.* v. *Kinney, supra,* that that act was con-
stitutional as to railroads because it related "to the
peculiar hazards inherent in the use and operation of"
them, and only applied to employees operating trains.
It is the contention of the Coal Company that it is a
deduction from that decision and the others cited, which
may be said to be of the same effect, that there must be a
difference observed between employees of coal mining
companies as they are or are not engaged in the hazardous
part of the business, and as that distinction is not ob-
served in the Compensation Act, it infringes the Bill of
Rights of the State, because it is made compulsory "upon
coal mining companies with respect to their employees
not engaged in the hazardous part of the business, and as
to all other private business enterprises within the State,
except railroad employees in train service, which are ex-
cluded, it is purely optional."

The argument in support of the contention is that the
act requires all employees in the coal mining business to
be paid compensation under the act whether employed
above ground or under ground, that is, whether hazard-
ously employed or otherwise, whereas, in the cited cases,

. it is insisted, the court considered such employment as a material distinction and that legislation which disregarded it would have unconstitutional discrimination.

The contention only has strength by regarding employers' liability acts and workmen's compensation acts as practically identical in the public policy respectively involved in them and in effect upon employer and employee. This we think is without foundation. They both provide for reparation of injuries to employees but differ in manner and effect, and there is something more in a compensation law than the element of hazard, something that gives room for the power of classification which a legislature may exercise in its judgment of what is necessary for the public welfare, to which we have adverted, and which cannot be pronounced arbitrary because it may be disputed and "opposed by argument and opinion of serious strength." *German Alliance Insurance Co.* v. *Kansas,* 233 U. S. 389; *International Harvester Co.* v. *Missouri,* 234 U. S. 199.

*Decree affirmed.*