ALBERT KONRAD, PETITIONER-RESPONDENT, v. AN-
HEUSER-BUSCH, INC., RESPONDENT-APPELLANT.

Essex County Court
Law Division

Decided January 9, 1958.

*Mr. Edward J. Abromson,* attorney for petitioner-respondent.

*Messrs. Gockeler & Cortese,* attorneys for respondent-appellant (*Mr. Richard S. Cortese,* of counsel).

GAULKIN, J. C. C. Konrad was employed as a warehouseman by Anheuser-Busch, Inc. He was injured while playing on the Anheuser-Busch softball team, and for those injuries he was awarded workmen's compensation. The employer appeals.

Konrad testified that he had been playing on a softball team, sponsored by the employer, which wore uniforms emblazoned "Budweiser." More employees wanted to play softball than could be accommodated by that one team, so a committee, which included Konrad, called upon Mr. King, the employer's "Industrial Relations Manager," who agreed to the formation of a second team. It was agreed by the committee and King that the uniforms of the new team were to carry the name "Anheuser-Busch, Inc."

The employer allotted $500 to be split equally between the two teams, each getting $250 to be used, as far as it would go, to defray the cost of uniforms and to pay other expenses. If there remained a surplus, the players could use it as they saw fit—for example, to go to a ball game. There was no testimony of any agreement by the employer to underwrite any deficit, or to pay any further sums, or to absorb any other costs.

The team was entered in the Newark Industrial League. The men played after hours, on their own time, off the employer's premises, and paid their own transportation to the playing field.

The Deputy properly found the advertising value of the team to the employer to be "relatively insignificant," since no spectators are mentioned in the testimony except "quite

a following of employees * * * and the women and the children." The games were mentioned in the Anheuser-Busch house periodical, and the Newark Industrial League standings were published in the Newark newspapers.

It seems to me, therefore, that the facts in this case are not materially distinguishable from those in *Padula v. Royal Plating & Polishing Co.*, 14 *N. J. Super.* 603 (*Cty. Ct.* 1951). In his conclusions the deputy makes no reference to any distinction between the facts in this case and the facts in the *Padula* case. He appears to have found for Konrad simply because he believed that the *Padula* case had been overruled by *Harrison v. Stanton*, 26 *N. J. Super.* 194 (*App. Div.* 1953). In this, I think, the Deputy erred.

■ The Deputy appears to have relied upon some of the general principles stated by Judge Jayne in the *Harrison* case, but the Deputy omitted others. More important, it must be remembered that general principles are stated by judges with reference to the facts in the cases before them. Cases state principles but decide facts, and it is only the decision on the facts that is a binding precedent. We must constantly repeat to ourselves the axiom—as trite as it may be—that general propositions do not decide concrete cases.

■ Judge Jayne did not mention the *Padula* opinion, or the cases cited therein by Judge Conlon. Had he intended to criticize or overrule those cases, Judge Jayne would certainly have commented upon them. Judge Conlon was a learned and careful jurist, too little appreciated in his lifetime, and I accept his opinion in the *Padula* case as a correct statement of the law in 1951; and since I find nothing to indicate that the law has changed since that date upon the facts here involved, I will follow it.

Konrad argues that this case is different than the *Padula* case because of the conversation he says he had with King. Over objection, and without "corroborative detail * * * to give * * * verisimilitude," Konrad launched into this "bald and unconvincing narrative":

"THE WITNESS: We informed him that there was so many men that wanted to play the game, that we all couldn't play on

one team. So he told us, in turn, that we could go ahead and form another team and he said it was very good—he thought for three reasons it was a very good idea: Because it helped the men to become closer to one another, help the men in their line of work with the company, and—

\* \* \*

Q. Now what is the other reason? A. The other reason is good publicity for the company and the selling of the product.

BY THE DEPUTY DIRECTOR:

Q. You are now quoting Mr. King? A. That's right.
Q. As near as you can? A. Yes."

Even though King was not called as a witness, I am unable to believe this testimony. When, as here, the employees came to ask for the money, why would the Industrial Relations Director feel it necessary to justify the expenditure? Especially with a reason the Deputy found to be non-existent —"good publicity for the company and the selling of the product."

But even if such statements were made by King, they added nothing to what the law assumes motivates employers to contribute toward their employees' recreation. As Judge Conlon said in the *Padula* case, 14 *N. J. Super.* at *page* 605:

"If the facts in the instant case were one of novel impression they might well lead to the conclusion that there existed such a mutuality of benefit as to render the injury compensable. There is considerable force to the argument that the employer benefited by the maintenance of a baseball team. There was involved, perhaps, the health of its employees, their morale, the possibility of attracting new employees, the advertising resulting from the team wearing uniforms with the names of the employer on them and the consequent publicity.

Be that as it may, this court is bound by the principles heretofore established and not as yet modified by our appellate courts. Under those circumstances it is not the province of a trial court to depart from established precedent."

I concur in that statement.

The determination of the Bureau is therefore reversed and the petition dismissed. An appropriate judgment may be submitted.