## In re ASBESTOS LITIGATION.

### Misc. No. 85–381.

United States District Court,
D. New Jersey.

Feb. 14, 1986.

OPINION

BISSELL, District Judge, writing for GERRY, BROTMAN, DEBEVOISE, SAROKIN, ACKERMAN, THOMPSON and RODRIGUEZ, District Judges.

### I. *Introduction*

In many asbestos related actions pending before this Court, the issue of the availability of the "state-of-the-art" defense to manufacturers of asbestos products has been presented in pretrial motions.[1] These motions take the form of either an application by a plaintiff to strike such a defense from the pleadings or one by a defendant-manufacturer to allow the defense and the submission of evidence to support it. Because of rules developed in recent decisions of the

---

1. In the present context, defendant-manufacturers would assert such a defense by introducing evidence that they neither knew nor should have known of the dangers of the asbestos contained in their products and therefore may not be charged in strict liability for a breach of any duty to warn of such dangers.

Supreme Court of New Jersey, apparently precluding that defense to strict liability claims in asbestos cases but permitting it in such actions involving other products, several defendants have argued that manufacturers of asbestos products are denied "the equal protection of the laws" of New Jersey in violation of the Fourteenth Amendment.[2]

That equal protection question presents a significant issue of constitutional law, not dependent upon the facts of a particular case. It has been raised in many asbestos cases pending before different judges of this Court. Therefore, it is the Court's desire to issue a ruling which will govern all such actions under the current state of New Jersey law. On October 11, 1985 this Court entered an Order consolidating all its asbestos cases for the limited purpose of a common, single adjudication of this issue. For the reasons set forth hereafter, this Court determines that under New Jersey law the state-of-the-art defense is not available, against a strict liability claim, to a defendant-manufacturer of products containing asbestos, and that this rule, even if limited only to such defendants, does not violate their "equal protection" rights.

## II. *The Law of New Jersey*

The history which has placed the Court in the present circumstances is well known to all involved with asbestos litigation in the State of New Jersey and accordingly will not be developed in great detail here. By way of brief review, we note the following:

In 1982 the New Jersey Supreme Court decided *Beshada v. Johns-Manville,* 90 N.J. 191, 447 A.2d 539 (1982), which expressly rejected the "state-of-the-art" defense in strict liability/failure to warn cases. However, on July 30, 1984, that same Court decided *Feldman v. Lederle Laboratories,* 97 N.J. 429, 479 A.2d 374 (1984), in which it dramatically altered this position. In *Feldman,* the Supreme Court ruled that actual and constructive knowl-

edge of a defendant are relevant factors in determining whether it is strictly liable in a failure to warn case. However, the Court expressly refused to overrule *Beshada.* Instead, the Court restricted *Beshada* "to the circumstances giving rise to its holding." 97 N.J. at 455, 479 A.2d 374.

One month after *Feldman,* and in reliance on that decision, Owens-Illinois, an asbestos manufacturer, in a case entitled *Heckman v. Johns-Manville,* pending in the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L–2470–81, filed a motion *in limine* to permit it to introduce evidence at trial demonstrating its lack of actual and constructive knowledge regarding the health hazards its product posed to users. Recognizing the importance of the issue for hundreds of other asbestos cases pending in this state, the Honorable John E. Keefe, *sua sponte,* entered an Order noticing the motion under the general caption *In the Matter of Asbestos Litigation Venued In Middlesex County,* Docket No. L–52237–81, and invited the asbestos bar to file briefs and participate in oral argument.

Judge Keefe, after hearing oral argument on September 10, 1984, denied the motion on the ground that in light of *Beshada* and its treatment in *Feldman,* an asbestos manufacturer, under New Jersey law, was prohibited from relying on the state-of-the-art defense.

Defendant Owens-Illinois then moved before the Superior Court, Appellate Division, for leave to appeal the trial court's ruling and simultaneously petitioned the New Jersey Supreme Court for direct certification. On December 5, 1984, the Supreme Court entered an Order granting the request for direct certification and further:

> ORDERED that leave to appeal is granted, and this Court, in *Feldman v. Lederle Laboratories,* 97 N.J. 429 [479 A.2d 374] (1984), having recognized that *Beshada v. Johns-Manville,* 90 N.J. 191 [447 A.2d 539] (1980) [*sic* ], applies to all

---

**2.** Federal jurisdiction in these matters is predicated upon diversity of citizenship. 28 U.S.C. § 1332. Accordingly, the applicable substantive law is that of New Jersey. *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

pending asbestos cases, the September 21, 1984 Order of the Superior Court, Law Division, (L–52237–81) is summarily affirmed.

*In the Matter of Asbestos Litigation Venued In Middlesex County,* 99 N.J. 201, 491 A.2d 700 (1984).

Thereafter, Owens-Illinois petitioned the New Jersey Supreme Court for a rehearing. The petition specifically sought clarification of the word "pending". On December 19, 1984, the motion for rehearing was denied and forwarded to counsel with a cover letter from the Clerk of the New Jersey Supreme Court which stated:

> The request has been denied essentially because Judge Keefe's interpretation that the Court's prior order applies to *all* pending asbestos cases was correct. [Emphasis in original].

### III. *Equal Protection*

■ One aspect of defendants' equal protection argument can be disposed of without extensive analysis. The application for rehearing before the Supreme Court of New Jersey focused upon a requested construction of the term "pending" as the term was employed in the Supreme Court's Order of December 5, 1985, *supra.* Since that term was not in fact clarified, either by the Order denying that motion for rehearing or by the covering letter from the Clerk of the Court, defendant-manufacturers argue before us that the use of the term "pending" by the Supreme Court of New Jersey establishes classifications within the asbestos cases themselves which deny equal protection of the laws to some defendants, in some cases, based solely upon the filing date of a particular action. Several possible constructions of the term "pending" and the date to which that term might be attributed have been posited by these defendants to this Court. We believe, however, that defendants' construction of the term "pending" is misplaced. In December 1984, the Supreme Court of New Jersey could only rule as to cases then in existence (or "pending") under current New Jersey law. This Court believes

that the New Jersey Supreme Court carefully chose the term "pending," later emphasized by its Clerk as being *"all* pending", to encompass all asbestos litigation governed by the present state of New Jersey law. In the fourteen months since December 1984, that law regarding the state-of-the-art defense at issue here has not changed. Accordingly, there are no classifications among asbestos cases *presently* "pending" in New Jersey, either in state or federal court. No viable equal protection argument can be posited upon such alleged (but non-existent) classifications.

This Court now turns its attention to the more serious question of whether asbestos defendants, when compared to other defendant-manufacturers in strict liability/failure to warn cases, are denied equal protection of the laws of New Jersey.

In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality."

*Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491 (1970).

As the application of *Beshada* to the defendants involves both the areas of economics and social welfare, and "neither apportions benefits and burdens on the basis of a 'suspect classification' nor impinges on 'fundamental interests,' it violates equal protection only if it bears no rational relationship to a legitimate state purpose." *Delaware River Basin Commission v. Bucks County Water & Sewer Authority,* 641 F.2d 1087, 1092 (3d Cir.1981) (citing *United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980); *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976)). In *Vance v. Bradley,* 440 U.S. 93, 97, 99

S.Ct. 939, 942–43, 59 L.Ed.2d 171 (1979), (footnotes omitted), the Court detailed this standard:

> ... [C]ourts are quite reluctant to overturn governmental action on the ground that it denies equal protection of the laws. The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted. Thus, we will not overturn such a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational.

Equal (if not greater) caution should be exercised in assessing whether decisions of a state Supreme Court have denied equal protection of the laws.

The rationality test requires the Court to conduct a two-step analysis. "First, it should identify the purposes of the statute [or as here, common law rule] and assure itself that these purposes are legitimate ... Second, having identified the governmental purposes, the court must determine whether the classification is rationally related to achievement of these goals." *Delaware River, supra* at 1092–3.

In identifying the purposes behind the *Beshada/Feldman* dichotomy, the Court may look to both an articulated purpose and "general public knowledge about the evil sought to be remedied, prior law, accompanying legislation, and formal public pronouncements." *Id.* at 1093, n. 9. In addition, "in the absence of an articulated purpose in the legislation or in its history, courts have upheld challenged provisions that furthered the attainment of goals either suggested by the parties or postulated by the reviewing court itself." *Id.* at 1094.

While the Supreme Court's Order affirming Judge Keefe's opinion in *In the Matter of Asbestos Litigation Venued In Middlesex County* does not articulate the purposes behind treating asbestos cases differently than others, other data for ascertaining them does exist. The first is found in the *Feldman* decision itself:

> In our opinion *Beshada, supra,* would not demand a contrary conclusion in the typical design defect or warning case. If *Beshada* were deemed to hold generally or in all cases, particularly with respect to a situation like the present one involving drugs vital to health, that in a warning context knowledge of the unknowable is irrelevant in determining the applicability of strict liability, we would not agree. Many commentators have criticized this aspect of the *Beshada* reasoning and the public policies on which it is based. [Citations omitted]. The rationale of *Beshada* is not applicable to this case. We do not overrule *Beshada,* but restrict *Beshada* to the circumstances giving rise to its holding. *See, e.g., Friedman v. Podell,* 21 *N.J.* 100, 105 [121 A.2d 17] (1956); *Konrad v. Anheuser-Busch, Inc.,* 48 *N.J.Super.* 386, 388 [137 A.2d 633] (Law Div.1958) ("Cases state principles but decide facts, and it is only the decision on the facts that is binding precedent.").

97 N.J. at 454–55, 479 A.2d 374.

As Judge Keefe stated regarding *Feldman's* treatment of *Beshada:*

> [The New Jersey Supreme Court] said that, "The rationale of *Beshada* is not applicable to this case," and when I say to this case they mean the rationale of *Beshada* is not applicable to the general typical liability case. "We do not overrule *Beshada* but restrict *Beshada* to the circumstances giving rise to its holding" and they use the word circumstances as opposed to facts because there were no facts which were decided in *Beshada* or the cases that were joined with it.

> The word circumstances has even broader meaning I think than the word fact. There are circumstances about *Beshada* which I think might conceivably be applied to other types of product litigation if not in New Jersey certainly in the United States. *The circumstances*

*of Beshada, when you consider the presence of amicus on the part of all litigants is that we have a vast number of people who are injured by a specific product, the injury is brought about over a long latency period and because of those factors and circumstances it is difficult, both for Plaintiffs and Defendants, to intelligently try the issue of state of the art.*

In justification for his reasoning in the opinion Justice Pashman pointed to the fact finding process as being one of the most difficult considerations for a trial Court and jury in that setting. I think he meant it to apply to a much broader setting but in terms of rationalizing why *Beshada* was not overruled *it seems to me that one of the factors and circumstances certainly is the question of how difficult it would be in a multiple defendant, multiple plaintiff case, for a jury to come to some conclusion that at one point in time one defendant knew and another didn't, whether it was in point of time that the actual injury occurred, things of that nature.*

*In the Matter of Asbestos Venued In Middlesex County,* transcript of proceedings of September 9, 1984, pp. 94–95. (Emphasis added).

Judge Gerry of this Court, prior to the New Jersey Supreme Court's affirmance in the Middlesex County litigation, addressed the equal protection argument in the case of *Gogol v. Johns-Manville,* 595 F.Supp. 971. (1984). In finding that there was no equal protection violation, he reasoned:

Looking generally at tort law, this court recognizes numerous distinctions made between classes of litigants. Under the New Jersey Tort Claims Act, for example, governmental entities and officers are at a distinct advantage over private actors. Non-medical-malpractice plaintiffs, ... are somewhat more favorably treated by New Jersey courts than malpractice claimants. The whole workmen's compensation scheme places both employers and employees in a position different from those involved in non-job-related accidents. There is nothing un-constitutional about any of the above examples. All of them are the result of legitimate policy decisions of New Jersey (and other states).

Looking at tort law generally, there is a huge distinction made between those defendants subjected to strict liability and those against whom plaintiffs are only entitled to prove negligence. Again, the courts have acted on the basis of public policy. Indeed, *Feldman* itself is basically a case dealing with the reasons to subject or not subject drug manufacturers to strict liability. Clearly, the chasm between strict liability defendants who may advance a state of the art defense and those who may not is not nearly so wide as the chasm between defendants subjected to strict liability and those who are not.

*It needs hardly be stated that asbestos cases are like no other products liability cases in terms of their volume and difficulty, as well as the massive societal problem they manifest. This alone, we believe warrants the distinction made by the Feldman court.*

*Gogol* at 974–75. (Emphasis added). See also the very recent case of *Spring Motors Distribution, Inc. v. Ford Motor Co.,* 98 N.J. 555, 489 A.2d 660 (1985), in which the New Jersey Supreme Court held that in a case involving solely economic loss due to a non-conforming product, between two commercial companies similarly situated, neither negligence nor strict liability was available to a plaintiff-purchaser as a basis for his action, only warranty theories.

■ The asbestos litigation has revealed the vast exposure of thousands of people, decades ago, through numerous different contacts, with products made by many manufacturers, resulting in latent injury detected 30 years and more after exposure, where evidence of actual or constructive knowledge will undoubtedly create widely differing circumstances between various defendants. These factors combine to create a situation where legitimate concerns of case management, economics, and social

welfare and policy regarding exposed persons and their families amply justify a rule precluding the state-of-the-art defense in these atypical products liability cases. This decisional rule evolving from such considerations of public policy is indeed similar to the legislative decision in workers' compensation matters, imposing liability without proof of fault (or the defense of contributory fault) upon the employer, unlike that imposed upon other defendants to claims resulting from the very same work-related injuries.[3] Furthermore, these considerations in support of the *Beshada* rule are so self-evident for asbestos cases that the New Jersey Supreme Court's failure to articulate them in its ruling of December 1984 is not fatal. Asbestos cases are different than typical products liability cases and treating them as such under different rules of law is permissible.

The purposes then, as this Court sees them, for treating asbestos cases differently than typical products liability cases are to ease jury confusion and resulting prejudice to litigants, and to expedite trial of the issues, both of which are areas in which a state Supreme Court has traditionally played a leading role. As Judge Keefe stated, asbestos cases involve "a vast number of people who are injured by a specific product, the injury is brought about over a long latency period and because of those factors and circumstances it is difficult, both for plaintiffs and defendants, to intelligently try the issue of state of the art." *In the Matter of Asbestos Litigation Venued In Middlesex County, supra,* transcript at 94–5. In addition, there is the difficulty in a multiple defendant case "for a jury to come to some conclusion that at one point in time one defendant knew and another didn't [that their products posed potential health hazards]." *Id.* at 95. That difficult jury function is compounded when the task of determining when the plaintiffs'

exposure occurred is included in the equation. While it is true that none of these variables is exclusive to asbestos cases, it is equally true that in such cases all of them come together in one action at one time.

Creating a common law rule, which prevents a defendant in an atypical products liability case such as asbestos litigation from relying on the state-of-the-art defense, eases the jury's burden by removing voluminous and often conflicting testimony concerning the knowledge possessed by the industry as a whole, and by each individual defendant in particular, on a myriad of different, remote dates. It thus serves to facilitate the trial of each of these numerous cases by removing an issue which, as stated earlier, is very difficult for the jury to grasp and fairly adjudicate as to each defendant separately.

Having identified what this Court feels are the purposes behind treating asbestos cases differently than typical cases, and having assured itself that those purposes are legitimate, the Court must now determine whether the *Beshada/Feldman* dichotomy is rationally related to the achievement of those goals. It is this Court's determination that there is a rational relationship. Eliminating the issue of the state of the art, for the reasons set forth above, is an appropriate rule for minimizing jury confusion (and resulting error regarding a particular defendant's responsibility) and expediting the trial of the hundreds of cases filed in this state.

Accordingly, this Court determines that the *Beshada/Feldman* dichotomy has a "reasonable, rational basis" and as such does not violate the equal protection clause of the Fourteenth Amendment. This Opinion and the enclosed Order implementing it shall be filed in and shall govern each asbestos action presently pending in this District. This decision shall have no retro-

**3.** Workers' compensation statutes have withstood other equal protection attacks. *Lower Vein Coal Company v. Industrial Board,* 255 U.S. 144, 41 S.Ct. 252, 65 L.Ed. 555 (1921); *New York Central Railroad v. White,* 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667 (1917); *Davidson v. Hobart*

*Corp.,* 643 F.2d 1386 (10th Cir.1981). There is no reason to believe that the feature of workers' compensation regarding an employer's liability violates such a defendant's equal protection rights.

active effect upon any asbestos cases previously adjudicated or otherwise disposed of, and may not serve as a ground for the reopening of any such concluded action. On the Court's own motion, a determination of the suitability of an interlocutory appeal to the United States Court of Appeals for the Third Circuit, pursuant to 28 U.S.C. § 1292(b), is included in the enclosed Order.

CLARKSON S. FISHER, Chief Judge, dissenting.

I respectfully dissent because I feel the majority opinion misses the mark in its application of equal-protection law by attempting to distinguish asbestos litigation from other strict-liability warning cases and in other particulars which are detailed below.

At the outset, I am hesitant to find a denial of equal protection arising out of the rulings in *Beshada v. Johns-Manville*, 90 N.J. 191, 447 A.2d 539 (1982), *Feldman v. Lederle Laboratories*, 97 N.J. 429, 479 A.2d 374 (1984), and *In the Matter of Asbestos Litigation Venued in Middlesex County*, 99 N.J. 201, 491 A.2d 700 (1984). *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979), counsels deference to the government where its actions are challenged on equal-protection grounds since "even improvident decisions will eventually be rectified by the democratic process." *Id.* at 97, 99 S.Ct. at 942. In the unusual situation before us, however, where we are called upon to review a judge-made rule of law, the efficacy of the checks and balances inherent in the "democratic process" is substantially reduced. In my view, therefore, our deference to the state court should be tempered and our application of the rationality test sharpened accordingly.

Furthermore, it must be remembered throughout that this is exclusively a fourteenth amendment controversy, therefore disagreement relating purely to underlying policy considerations has no rightful place in the discussion, nor can it be cloaked in the guise of equal-protection doctrine.

Only sound constitutional arguments can be heard in objection to the majority's conclusion.

As a final preliminary note, it should be stated that the issue before the court poses a genuinely troubling dilemma. The debate hinges on whether a real and substantial difference separates defendants in asbestos-related, failure-to-warn products-liability actions from those in all other failure-to-warn cases. *Reed v. Reed*, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971). We can go two routes. If such a difference exists, asbestos firms are denied a potentially exculpatory defense which the New Jersey Supreme Court has itself expressly held available in other strict-liability contexts. *Feldman*, 97 N.J. at 451–52, 479 A.2d 374; *O'Brien v. Muskin Corp.*, 94 N.J. 169, 463 A.2d 298 (1983) (state-of-the-art evidence is relevant in design-defect cases). If, on the other hand, the difference is nonexistant, we are inexorably drawn to the conclusion that the New Jersey Supreme Court has blinked on the doctrine of equal protection. Neither result is appealing. Nevertheless, reason, experience, common sense, and the Constitution dictate that we choose the second, and perhaps less-travelled, route, regrettable though it may be to disagree with the state's highest court.

There can be no argument with the constitutional framework employed by the majority. Under traditional analysis, *Beshada/Feldman* denies equal protection only if there is no legitimate state purpose rationally promoted by the challenged classification. *Western & Southern Life Insurance Co. v. California State Board of Equalization*, 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981); *San Antonio Ind. School Dist. v. Rodriguez*, 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16, *rehearing denied*, 411 U.S. 959, 93 S.Ct. 1919, 36 L.Ed.2d 418 (1973).

My opposition originates in the soft and uncritical application of rule to fact. For satisfaction of the "legitimate purposes" requirement, the majority relies expressly on nothing more than the elimination of

jury confusion and the expedition of trials. These are certainly significant objectives in any setting, but here those reasons simply are not enough to rebut a challenge on constitutional grounds where the underlying tort liability at stake is particularly high. In this regard, the opinion conspicuously lacks citation to case law for the critical proposition that such relatively slight goals have been, or can be, recognized as sufficient "legitimate state purposes" in an equal-protection setting. In addition, the reference to "legitimate concerns of case management, economics, and social welfare and policy," at page 11 is undeveloped. It does little to truly differentiate asbestos from other difficult tort litigation or to rationalize the severe outgrowth of the proffered distinction.

It is also mere conjecture that elimination of state-of-the-art evidence will streamline litigation and reduce jury confusion. There has been no data to support the majority's assertions in this regard. Indeed, in *Wolf v. Procter & Gamble*, 555 F.Supp. 613 (D.N.J.1982), it was held that state-of-the-art is a valid defense to negligence claims. Such evidence is also relevant to the consideration of punitive damages. Thus, state-of-the-art evidence may well find its way into asbestos trials regardless of *Beshada/Feldman*. Confusion would then be compounded, not reduced, since jurors would be required first to distinguish strict liability from negligence and then to discretely apply the state-of-the-art evidence only to the latter. Severance might avoid these results, but at the same time defeat the original aim of streamlining trial of the issues. In sum, accomodation

of juries, though praiseworthy, carries little weight in the equation.[1]

The equal-protection test's second element, too, is not sufficiently treated by the majority. In the single paragraph—indeed, the single sentence—devoted to this subject at page 13, the majority seems to assume rather than to identify and explain a rational relationship between the legitimate state purposes and the segregation of asbestos defendants. Aside from expedience, a term employed by the majority at page 779 and one not known for its positive connotations, I am unable to discern from the opinion or to imagine of my own the necessary connection bridging means and ends.

Accordingly, in the absence of a stronger argument to satisfy both elements of the equal-protection formula, I am constrained to conclude that by prohibiting asbestos defendants from introducing state-of-the-art evidence the Supreme Court of New Jersey violates the fourteenth amendment.

Further considerations also compel my view of this matter. I disagree, for one, with the majority's assessment that asbestos actions are "self-evidently" and substantially different from other products cases. Looks are deceiving, in litigation as in life; thus, no surer trap can be set than for a court to judge a suit by the code number[2] it bears. I refer specifically to three areas in which the majority itself, and through its incorporation of decisions by Judge Gerry[3] and Judge Keefe,[4] seeks support for the distinctive treatment of asbestos: (1) volume of cases, (2) numerosity of parties, and (3) complexity of issues.

The volume of asbestos cases on court dockets[5] is absolutely irrelevant to consid-

1. Not to be overlooked in this discussion of unburdening the jury is the distinct possibility that asbestos cases will be tried to the bench. Taking for granted the competence and acuity of the state and federal bench in New Jersey, the argument regarding simplification of the issues for the trier of fact therefore goes largely for naught.

2. All asbestos cases commenced in the District of New Jersey are marked by the court clerk with the distinctive computer code number 368.

3. *Gogol v. Johns-Manville*, 595 F.Supp. 971 (1984).

4. *In the Matter of Asbestos Litigation Venued in Middlesex County*, Superior Court of New Jersey, Law Division, Docket No. L–52237–81, transcript of proceedings of Sept. 9, 1984.

5. The district court clerk reports that approximately 133 asbestos-related cases were pending in the District of New Jersey as of January 1, 1986. The court's full docket consisted of 5,570 civil actions, thus 2.3% were asbestos related.

eration of the present equal-protection challenge. "The constitutional imperatives of the Equal Protection Clause cannot be satisfied by mere conjecture as to administrative convenience." *Frazier v. Manson,* 703 F.2d 30, 35 (2d Cir.), *cert. denied,* 464 U.S. 934, 104 S.Ct. 339, 78 L.Ed.2d 308 (1983). More to the point, however, is the realization that if, as the majority premises, the elimination of juror confusion and resultant prejudice is at the core for precluding state-of-the-art evidence, what difference does it make then whether the court's docket lists one or a million and one asbestos actions? One jury will, in most instances, decide but one case. And it matters not one iota to Monday's jury that a million asbestos cases will still remain on Tuesday, nor does such knowledge contribute one measure of confusion to that panel's deliberation. As Owens-Illinois, Inc. astutely observes in its brief[6] on these issues, it would appear that there are more routine auto accident cases than asbestos cases in the courts, yet the many motorists in litigation are not denied the right to prove, for example, comparative negligence on the scant basis of their prolific numbers.

As for the majority's point concerning the abundance of plaintiffs and defendants in the asbestos cases, it must be noted that not every action is a multi-party behemoth. To be sure, there are cases where the parties are almost innumerable. But there are also instances where the named plaintiffs and defendants can each be counted on one hand. *E.g., Miller v. Johns-Manville,* Civil Action No. 85–389 (husband and wife v. five named defendants); *Gregory v. General Motors Corp.,* Civil Action No. 82–4031 (administratrix and son v. one named defendant). Where in these smaller cases is the danger in permitting a jury to weigh the evidence of the actual and constructive knowledge of the handful of defendants who comprise the chain of asbestos distributors? I see none. Thus, the majority's overly broad numerosity argument is mis-

placed and the New Jersey Supreme Court's preclusion of state-of-the-art evidence constitutes needless and prejudicial overkill.

Now of course the majority is concerned lest the cumulative effect of complicated legal theories, multiple parties, and prolonged latency of injury overwhelm our juries. But even at its hypothetical worst, the danger is not so extreme as to warrant the pre-emptive strike against the asbestos litigants' defensive arsenal. Fundamental fairness must prevail over cures that are worse than the disease. The proper remedy for projected jury confusion, prejudice, or delay is not arbitrary and radical excision of potentially dispositive evidence, but rather time-tested methods including thoughfully prepared jury instructions and charges, well-organized presentation of all evidence, expert testimony, and other ingredients which make up a well-tried case.

Even if it were agreed that juror confusion and facilitation satisfy the rationality test, I am not entirely convinced that it is proper for us to ascribe these purposes to the New Jersey Supreme Court. Admittedly, *Delaware River Basin Commission v. Bucks County Water & Sewer Authority,* 641 F.2d 1087 (3d Cir.1981), permits us to hypothesize as to the purposes behind a classification. But, in that very same opinion, the circuit court also recognized that the "Supreme Court has sometimes indicated that rationality analysis must consider the actual purposes of the legislature, rather than post hoc justifications offered by government attorneys or hypothesized by the court itself." 641 F.2d at 1094. The United States Supreme Court has often looked for an actual articulation of the state's purposes where the subject matter at hand was unusually sensitive or troublesome. *See, e.g., San Antonio School District,* 411 U.S. at 17, 44–52, 93 S.Ct. at 1288, 1302–06; *McGinnis v. Royster,* 410 U.S. 263, 270–71, 93 S.Ct. 1055, 1059–60, 35

---

6. See Memorandum of Law in Support of Motion of Defendant Owens-Illinois, Inc. to Admit Evidence Relating to its Actual or Constructive Knowledge of the Potential Hazards of its Prod-

uct submitted to Judge Sarokin in *Valori v. Johns-Manville Sales Corp.,* Civil Action No. 82–2686.

L.Ed.2d 282 (1973). Thus, where a decision (1) emanates from a court and is therefore not readily susceptible to the aforementioned correctives of the democratic process, and (2) has generated substantial critical commentary,[7] I do not feel it improper to impose an articulation requirement. Since my reading of the cases reveals no express or implied explanation for the discriminatory fence raised around asbestos defendants, the failure of the New Jersey Supreme Court to disclose its rationale is, in and of itself, fatal to the distinction. There is simply no way to escape the reality of this state of affairs and the majority compounds and perpetuates an unfortunate error.

Judge Gerry has also commented on this issue in an earlier opinion, noted above, from which the majority quotes extensively. An important distinction must be drawn regarding those excerpted comments. In looking generally at tort law, Judge Gerry observed by way of example, that this court recognizes numerous distinctions made between classes of litigants under the New Jersey Tort Claims Act and Workers Compensation Act and in medical malpractice litigation. *Gogol* at 974-75. In none of these contexts though has the classification effectively stripped litigants of a substantive right without at the very least providing some procedural *quid pro quo*. Here, the New Jersey Supreme Court has withheld a theory, which, if proved, could conceivably relieve numerous defendants of liability, but offered no substitute or counter-measure. Had the court somehow "re-evened" the score between asbestos plaintiffs and defendants or made the latter's isolation less glaringly conspicuous, perhaps the *Beshada/Feldman* rule would be more palatable.

Furthermore, the majority has created a potential Pandora's Box at pages 11 and 12 with its usage of the phrase "atypical products liability cases," by no means a synonym for "asbestos cases." Whatever *Beshada/Feldman* stands for, the damage should be kept to a minimum at all costs. Yet the imprecision that is brought to the opinion by the term "atypical"—however qualified it may be in context—unnecessarily opens the door for an extension of the challenged rule to an unforeseeable maze of applications.

Finally, the only point left for discussion is to surmise what in fact the New Jersey Supreme Court might have meant by the controversial language that restricted *Beshada* "to the circumstances giving rise to its holding." *Feldman*, 97 N.J. at 455, 479 A.2d 374. As stated above, I find judicial speculation in this area to be inappropriate; therefore, I will hazard no guess as to what this phrase intends. I note only that had the supreme court actually wished the result reached by the majority, it could easily have said "state-of-the-art evidence is relevant in failure-to-warn cases but not where asbestos is involved," or "but not where the case is big and clumsy." The silence is indeed clanging.

In sum then, the New Jersey Supreme Court's classification of asbestos defendants should fall for a multitude of reasons, for in the supposed hope of reducing that prejudice generated by confusion, the court and today's majority achieve the very result they seek to avoid. Asbestos defendants are entitled to the same opportunity to be heard as manufacturers and distributors of all other products. The deprivation of this opportunity has the effect of inappropriately classifying these defendants and subjecting them to a different and harsher standard of liability by denying the chance to present relevant and probitive evidence.

The difficulty of the facts in a case is no ground for ignoring those facts. That is precisely what the majority proposes we do in our asbestos cases. Expedience is thereby exalted over fairness and justice is su-

**7.** See Schwartz, *The Post-Sale Duty to Warn: Two Unfortunate Forks in the Road to a Reasonable Doctrine*, 58 N.Y.U.L.Rev. 892, 901-04 (1983); Comment, *Requiring Omniscience: The Duty to Warn of Scientifically Undiscoverable Product Defects*, 71 Geo.L.J. 1635, 1644-53 (1983); Note, *Products Liability—Strict Liability in Tort—State-of-the-Art Defense Inapplicable in Design Defect Cases*, 13 Seton Hall L.Rev. 625, 636-42 (1983).

bordinated to simplicity. It is inconceivable that these results were intended by the New Jersey Supreme Court.

Judges LACEY,[8] STERN, BARRY, COWEN and COHEN authorize me to say that they join in this dissent.

On its own motion, on October 11, 1985, the court ordered that all cases in the District of New Jersey involving exposure to or use of asbestos be consolidated for the sole purpose of determining issues concerning the relationship among the New Jersey Supreme Court's decisions in *Beshada v. Johns-Manville Products Corp.*, 90 N.J. 191, 447 A.2d 539 (1982), and *Feldman v. Lederle Laboratories*, 97 N.J. 429, 479 A.2d 374 (1984), and the Equal Protection Clause of the fourteenth amendment of the Constitution of the United States, the opinion of the court on these issues to become the law of the case for all cases in the asbestos litigation.

For the reasons stated in the accompanying opinion, the court determines that the aforementioned decisions together with *In the Matter of Asbestos Litigation Venued in Middlesex County*, 99 N.J. 201, 491 A.2d 700 (1984), do not violate the Equal Protection Clause of the fourteenth amendment; accordingly, it is, on this 14th day of February, 1986,

ORDERED that under New Jersey law the state-of-the-art defense is not available, against a strict-liability claim, to a defendant-manufacturer of products containing asbestos, and it is further

ORDERED that this rule shall henceforth be the law of the case for all cases in the asbestos litigation in the District of New Jersey.

Parties to asbestos actions in which motions pertaining to the state-of-the-art defense are pending as of this date are directed to submit appropriate orders to the judge to whom the action is assigned.

Motions subsequently made regarding this issue shall be submitted to the judge to whom the action is assigned and shall be disposed of in accordance with this order and accompanying opinion.

This decision shall have no retroactive effect upon any asbestos cases previously adjudicated or otherwise disposed of and may not serve as a ground for the reopening of any such concluded action.

On its own motion, the court is of the opinion that controlling questions of law have been presented regarding the constitutionality of the denial of the state-of-the-art defense to manufacturers of asbestos products in New Jersey. There is substantial ground for difference of opinion on this question and an immediate appeal from this order to the United States Court of Appeals for the Third Circuit, pursuant to 28 U.S.C. § 1292(b), may materially advance the ultimate termination of litigation. Any application for immediate interlocutory appeal from this order shall not result in a stay of proceedings in this court.

---

**8.** Judge Frederick B. Lacey participated in the court's consideration and determination of this matter on December 23, 1985. He resigned from the bench on January 31, 1986, prior to the filing of this opinion.