Avelino LEONEN, et al., Plaintiffs,

v.

JOHNS–MANVILLE CORPORATION,
et al., Defendants.

Civ. No. 82–2684 (CSF).

United States District Court,
D. New Jersey.

July 5, 1989.

Gavin and Gavin by Sandra F. Gavin, Haddonfield, N.J., for plaintiffs Avelino and Delores Leonen.

Horn Kaplan Goldberg Gorny & Daniels by Donald M. Kaplan, Atlantic City, N.J., for defendant Owens–Corning Fiberglas Corp.

McCarter & English by Andrew T. Berry, Newark, N.J., for defendants Owens–Illinois, Inc. and The Celotex Corp.

## OPINION

CLARKSON S. FISHER, District Judge.

This litigation stems from the exposure of plaintiff, Avelino Leonen, to asbestos-containing products during his service in the Navy and also while employed at the New York Shipyard and the Philadelphia Naval Shipyard, and the injuries he suffered as a result of that exposure. The action was bifurcated, and a jury trial was commenced on the issues of defendants' liability and compensatory damages. At the completion of the first phase, judgment was entered for plaintiff in the amount of $25,000.00. This judgment was later amended to include $1500.00 in medical surveillance fees and an award of prejudgment interest. Although the court at first declined to award prejudgment interest for a seven (7) month period during which the trials of certain asbestos litigations were stayed by the United States Court of Appeals for the Third Circuit, the court amended its decision to include prejudgment interest for this period when, on a motion for reconsideration, documentation was submitted which showed that the instant suit was not among those actions stayed by the Third Circuit. A subsequent motion for a new trial, filed by the defendants, was denied by the court.

Trial in the punitive damage phase of the litigation commenced on January 23, 1989. On January 24, 1989, this court granted plaintiff's motion for a mistrial after coun-

sel for defendant Owens–Corning Fiberglass ("Owens–Corning") attempted to relitigate the presence of warnings on his client's products during the relevant time period, an issue already resolved in the liability phase of this litigation. At this time, no new trial date has been set.

The matter is presently before the court on motion of defendants The Celotex Corporation ("Celotex"), Owens–Illinois, Inc. ("Owens–Illinois") and Owens–Corning for summary judgment, pursuant to Fed.R. Civ.P. 56, dismissing plaintiff's punitive damages claim or, in the alternative, for a stay of the trial on punitive damages until the United States Supreme Court issues its decision in *Kelco Disposal Inc. v. Browning–Ferris Indus.*, 845 F.2d 404 (2d Cir. 1988), *cert. granted*, — U.S. —, 109 S.Ct. 527, 102 L.Ed.2d 559 (1988). This request has been rendered moot, however, by the issuance of the *Browning–Ferris* opinion on June 26, 1989. *See* — U.S. —, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989). Defendants also request a stay of the trial until the Johns–Manville Settlement Vehicle may be joined as a defendant in the case.

Defendants move for summary judgment on the following grounds: 1) plaintiff's punitive damage claims must be dismissed as a matter of federal constitutional law under *In re Asbestos Litigation*, 829 F.2d 1233 (3d Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 1586, 99 L.Ed.2d 901 (1988); 2) New Jersey's standard for awarding punitive damages is constitutionally void for vagueness; 3) because the defendants have already been sanctioned with punitive damages in prior cases, an award of punitive damages in this case would violate the "fundamental fairness" requirement of the due process clause; 4) plaintiff's claim for punitive damages is barred by the double jeopardy clause of the fifth amendment; and 5) plaintiff's claim for punitive damages must be dismissed because his proofs are inadequate, as a matter of law, to support the necessary finding of deliberate, wanton and malicious conduct with knowledge of a high degree of probability of harm. Plaintiff opposes both the motion for summary judgment and the defendants'

alternative request for a stay. Before turning to the merits of defendants' request for a stay, the court will address each of the contentions raised by defendants as a basis for dismissing plaintiff's punitive damage claims on summary judgment.

## I.

### Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56 directs the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Spangle v. Valley Forge Sewer Auth.*, 839 F.2d 171, 173 (3d Cir.1988).

■ The current standard for summary judgment requires that before judgment is entered as a matter of law, there be no "genuine" issue of "material" fact; however, the mere existence of some alleged factual dispute between the parties is an insufficient basis on which to deny a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A fact is "material" only if it will affect the outcome of a lawsuit under the applicable law, and a dispute over a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

■ The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d

Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). This requires only that the party seeking summary judgment "[inform] the district court of the basis of its motion, and [identify] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett, supra.* Rule 56 does not require that the moving party support its motion with affidavits or materials which negate the opponent's claim; instead, this "burden may be discharged by 'showing ... that there is an absence of evidence to support the nonmoving party's case.'" *Celotex Corp. v. Catrett*, 477 U.S. at 323–25, 106 S.Ct. at 2552–53.

■ Once a properly supported motion for summary judgment is made, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e);[1] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510. There is no issue for trial unless the nonmoving party can demonstrate that there is sufficient evidence favoring the nonmoving party so that a reasonable jury could return a verdict in that party's favor. *Anderson v. Liberty Libby, Inc.*, 477 U.S. at 249, 106 S.Ct. at 2510. The role of the court, however, is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Id.* The court is mindful that, in deciding a motion for summary judgment, it must construe the facts and inferences therefrom in a light most favorable to the nonmoving party. *Pollack v. American Telephone & Telegraph Long Lines*, 794 F.2d 860, 864 (3d Cir.1986).

### 1. The Availability of Punitive Damages in Asbestos Cases Under Danfield

■ Defendants argue that plaintiff's punitive damages claim is constitutionally impermissible under the Court of Appeals for the Third Circuit's recent decision in *In re Asbestos Litigation*, 829 F.2d 1233 (3d Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1586, 99 L.Ed.2d 901 (1988) (*Danfield*). In *Danfield*, the Court of Appeals upheld the District Court's finding that the New Jersey Supreme Court's decisions in *Beshada v. Johns–Manville Prod. Corp.*, 90 N.J. 191, 447 A.2d 539 (1982), and *Feldman v. Lederle Laboratories*, 97 N.J. 429, 479 A.2d 374 (1984), precluding asbestos manufacturers from asserting a "state-of-the-art" defense in failure to warn/strict liability cases, but making this defense available to other types of manufacturers (*i.e.*, drug manufacturers), withstood constitutional challenge on equal protection grounds. 829 F.2d at 1244.

In *Beshada*, plaintiffs sought to strike a state-of-the-art defense asserted by defendants, asbestos manufacturers, in a failure to warn/strict liability action. The New Jersey Supreme Court reversed the Appellate Division's denial of plaintiffs' motion, holding that in products-liability cases "culpability is irrelevant" because "strict liability focuses on the product, not the fault of the manufacturer," and thus, in failure-to-warn cases, the medical community's presumed unawareness of the dangers of asbestos is not a defense. 90 N.J. at 204, 447 A.2d 539. The court further held that a rule excluding the state-of-the-art defense, thus imposing liability for failure to warn of dangers which were undiscoverable at the time of manufacture, will advance the goals sought to be achieved by the law of strict liability—risk spreading, accident avoidance and simplification of the fact-finding process. 90 N.J. at 205–08, 447 A.2d 539. Significantly, the court in *Beshada* did not limit its holding to asbestos lawsuits, but made it applicable to all product liability cases.

---

1. Fed.R.Civ.P. 56(e) provides, in relevant part: When a motion for summary judgment is made and supported as provided by this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Two years later, in *Feldman v. Lederle Laboratories*, the New Jersey Supreme Court addressed this same issue in a case involving drug manufacturers, but reached a different result. The court, in an apparent contradiction of its earlier holding, held that in warning cases, conduct should be measured by the knowledge available at the time the manufacturer distributed the product. 97 N.J. at 452, 479 A.2d 374. Thus, the court allowed the drug manufacturers to assert a state-of-the-art defense, concluding that producers of pharmaceuticals only have a duty to warn about dangers of which they know or should know due to reasonably obtainable or available knowledge. *Id.* at 452–54, 479 A.2d 374. Despite this change in position, however, the court, in *Feldman*, expressly refused to overrule *Beshada*, but, instead, restricted it to "the circumstances giving rise to its holding." 97 N.J. at 455, 479 A.2d 374.

In *Danfield*, the New Jersey District Court consolidated all of the asbestos cases in this district for the purpose of addressing equal protection challenges to the *Beshada/Feldman* dichotomy brought by several of the defendants in the various cases before the court. 628 F.Supp. 774, 775 (D.N.J.1986), *aff'd*, 829 F.2d 1233 (3d Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 1586, 99 L.Ed.2d 901 (1988). The asbestos manufacturers argued that precluding the state-of-the-art defense in asbestos cases, but permitting it in actions involving other products, denied manufacturers of asbestos products the "equal protection of the laws" guaranteed them under the fourteenth amendment to the Constitution. Sitting *en banc*, the court concluded, in its majority opinion, that the state supreme court's decision to treat asbestos cases differently from typical products-liability cases bore a "rational relation" to a legitimate state purpose-easing

jury confusion and the resulting prejudice to litigants, and expediting trial of the issues—and thus did not violate the equal protection clause.[2] *Danfield*, 628 F.Supp. at 779. On appeal, the Third Circuit affirmed the court's decision with regard to the equal protection challenge, and also rejected defendants' due process claims, raised for the first time in the Court of Appeals.

Defendants now argue that to allow plaintiff to proceed with his claim for punitive damages is violative of federal constitutional law under the Third Circuit's decision in *Danfield*. It is defendant's contention that the only ground upon which the Court of Appeals found the *Beshada/Feldman* classification to withstand an equal protection challenge was that New Jersey had a legitimate state interest in easing jury confusion and expediting trial of the overwhelming number of asbestos cases flooding the courts, and that streamlining these litigations through the elimination of the state-of-the-art defense was rationally related to this interest. Permitting plaintiff to proceed with a punitive damages trial in which evidence relating to defendants' knowledge or the availability of knowledge regarding the dangers of asbestos at the time of distribution must be introduced after plaintiff "chose" a simplified liability trial under *Beshada*, free of any evidence pertaining to conduct, defendants assert, removes the sole basis on which the Court of Appeals upheld the *Beshada/Feldman* dichotomy against the equal protection challenge.

Defendants rely heavily on a passage in *Danfield* in which the Court of Appeals addresses the impact a later decision by the New Jersey Supreme Court, *Fischer v. Johns–Manville Corp.*, 103 N.J. 643, 512 A.2d 466 (1986), had on the state's interest

---

**2.** I authored a strong dissent, joined by Judges Lacey, Stern, Barry, Cohen and Cowen, on the ground that case management was an insufficient basis upon which to rebut a constitutional challenge. *Danfield*, 628 F.Supp. at 780–81 (dissenting opinion). Moreover, despite the rationale attributed to the state court opinions by the majority, my reading of these cases revealed a glaring absence of any articulation, by the state

court, of a basis for its disparate treatment of asbestos defendants. *Id.* at 782–83. Finally, both the state court opinions and the District Court majority opinion in *Danfield* were bereft of any data substantiating their expectation that eliminating state-of-the-art defenses in asbestos cases will streamline these litigations and reduce jury confusion. 628 F.Supp. at 781.

in simplifying asbestos litigation. In *Fischer*, the court held that plaintiffs are not barred under *Beshada* from seeking punitive damages in failure-to-warn/strict liability cases involving exposure to asbestos or asbestos products. 103 N.J. at 656, 512 A.2d 466. The fact that defendants are precluded from introducing conduct-related evidence in defense of their liability does not make this same evidence inadmissible as it relates to other aspects of the case, including punitive damages. *Id.* The majority in *Danfield* recognized that this decision "substantially undercut" the state's interest in simplifying asbestos cases, noting that "for all practical purposes what *Beshada* precluded from coming in the front door, *Fischer* allows in the back door." 829 F.2d at 1244.

In support of their contention that plaintiff in the instant matter is now barred from asserting a claim for punitive damages, defendants point to the following statements in *Danfield*:

> ... [T]he goal of simplifying asbestos litigation is eroded by the New Jersey decision to award punitive damages in these cases.
>
> Although we find the *Fischer* case troubling, we once again acknowledge our limited function in reviewing cases of this type. *We cannot overlook the fact that those plaintiffs who wish to avoid the cost of proving the foundation for an uncertain award of punitive damages still may take advantage of the simplified compensation claim Beshada makes available.*

829 F.2d at 1244 (emphasis added). Defendants apparently construe the above statement to mean that any time an asbestos plaintiff, in a bifurcated trial, has the advantage of proving liability in the simplified manner permitted under *Beshada*, that plaintiff is then precluded from seeking an award of punitive damages. According to defendants, this result is mandated under *Danfield* because to permit a punitive dam-

ages trial with the requisite introduction of conduct-related evidence in a second proceeding virtually destroys the constitutional basis upon which the *Beshada/Feldman* classification was upheld.

Only when read in complete isolation from the remainder of the *Danfield* opinion can this passage support the result urged by defendants. Parts of an opinion, however, cannot be severed from the whole merely to further the interests of a party who seeks an interpretation beneficial to itself. In light of the remaining reasoning set forth by the Court of Appeals in upholding the *Beshada/Feldman* classification against constitutional challenge, reasoning which defendants carefully choose to ignore, the court finds defendants' argument unpersuasive.

First, the principal "legitimate state interest" found by the Third Circuit as underlying the *Beshada/Feldman* doctrine was the "suggestion" in *Feldman* that "these manufacturers knew the dangers of asbestos, and consequently, the state-of-the-art defense could not be sustained.[3] *Danfield*, 829 F.2d at 1241. The court found further support for this theory in the later *Fischer* decision, in which the New Jersey Supreme Court "determined that one manufacturer did know the hazards of asbestos by the 1930's and that other manufacturers could have gained similar knowledge through articles published at that time in scientific journals." *Id.* at 1242. Under these circumstances, the Court of Appeals found reasonable the state court's decision to preclude introduction of a defense which it had determined was unsustainable, as a matter of law.

Thus, simplification of the fact-finding process was not the only justification found by the Third Circuit for New Jersey's disparate treatment of asbestos manufacturers. In fact, there is much in the opinion which indicates that case management was only an added consideration used to but-

---

**3.** There was some disagreement between Judge Weis (majority opinion) and Judge Becker (concurring opinion) with regard to whether the *Feldman* court intimated that the harms from asbestos were actually known or were merely knowable because of available scientific data. *Danfield*, 829 F.2d at 1245–46 (Becker, J., concurring). Since constructive knowledge is sufficient to defeat the state-of-the-art defense, however, the result is the same.

tress the central justification for the different treatment of this class of defendants— that the state-of-the-art defense should not be available to asbestos manufacturers because the hazards of their product were knowable to the industry at all relevant times. *See Danfield,* 829 F.2d at 1251 (Becker, J., concurring opinion). The majority noted that simplifying the fact-finding process could not be a determinative factor in the elimination of a substantive defense, regardless of the benefits which would ensue to victims seeking recovery. *Danfield,* 829 F.2d at 1243. Similarly, administrative convenience was recognized as an inadequate ground on which to base denying a defendant an exculpatory defense. *Id.*

Whatever criticism can be leveled at either the majority's finding that the New Jersey Supreme Court based its decision to treat asbestos manufacturers differently from other manufacturers with regard to the state-of-the-art defense, or its determination that the asbestos industry had information concerning the harmful effects of asbestos exposure available to it, or at the propriety of taking judicial notice of this fact without granting the parties an opportunity to be heard on this issue,[4] it cannot seriously be argued that simplification of the fact-finding process was the only basis upon which the court rejected the defendants' equal protection arguments. Even if it were the sole justification given by the majority for finding the *Beshada/Feldman* doctrine constitutional, the statement quoted by defendants merely evidences the majority's recognition that while an asbestos trial free of conduct-related evidence would be rare because plaintiffs can, under *Fischer,* seek punitive damages, the *Beshada/Feldman* holdings will streamline litigation of those asbestos suits in which the plaintiff seeks only compensatory damages. *Danfield,* 829 F.2d at 1244. It does not support the conclusion that only when a plaintiff opts not to seek punitive damages

can he constitutionally utilize the simplified *Beshada* approach to obtain compensation. Such a ruling would be completely contrary to the decision in *Fischer* to allow plaintiffs in asbestos suits to seek punitive damages despite *Beshada.* 103 N.J. at 656, 512 A.2d 466.

The *Beshada/Feldman/Fischer* trilogy has been the subject of much attack; nonetheless, all three cases were reviewed by the Court of Appeals in *Danfield* and were found to withstand the constitutional challenge. They remain the law in this state. Hence, there is no basis under *Danfield* for closing the door on plaintiff's punitive damages claim.

### 2. The Void for Vagueness Doctrine

■ Defendants argue that New Jersey's standard for awarding punitive damages lacks adequate guidelines and, as such, is unconstitutionally void for vagueness. Specifically, they assert that the lack of adequate guidelines, coupled with jury bias against corporations, greatly increases the inherent "take from the rich, give to the poor" tendencies of juries and is violative of the due process clause of the fourteenth amendment. Plaintiffs contend, however, that the standard for an award of punitive damages in New Jersey is clear and certain and, in any event, is no different from that set forth by the United States Supreme Court in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), for the imposition of punitive damages in cases involving free speech issues. Furthermore, plaintiff argues that since defendants' conduct is commercial in nature and is not constitutionally protected activity, the standard for awarding punitive damages should be subject to a less stringent vagueness test.

■ The constitutional ban on vague laws is intended to invalidate statutory enactments which fail to provide adequate

---

**4.** Judge Hunter, in his dissent to *Danfield,* found case management an insufficient basis for depriving one class of manufacturers of an exculpatory defense; the jury confusion rationale totally undermined by the *Fischer* decision; and precluding asbestos manufacturers from relitigating the "knowledge" question because the state supreme court took judicial notice of the knowability of asbestos harms without a full factual development of the issue to violate the defendants' due process rights. 829 F.2d at 1252–62.

notice of their scope and sufficient guidelines for their application. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162–63, 92 S.Ct. 839, 843–44, 31 L.Ed.2d 110 (1975); *State v. Cameron*, 100 N.J. 586, 591, 498 A.2d 1217 (1985). The prohibition against vague laws serves several purposes—to ensure that those regulated by the law have proper notice of what is and isn't forbidden; to provide adequate standards for those who enforce the laws; and to protect basic first-amendment freedoms. *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972).

█ Because both liberty and property are specifically protected by the fourteenth amendment against any state deprivation which does not meet the standards of due process, the void-for-vagueness doctrine is applicable to civil as well as criminal laws. *Giacco v. Pennsylvania*, 382 U.S. 399, 402, 86 S.Ct. 518, 520, 15 L.Ed.2d 447 (1966). The degree of vagueness tolerated under the Constitution, however, will depend in part on the nature of the enactment, and the determination of vagueness must be made in light of the contextual background of the particular law, with a firm understanding of its purpose. *Village of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982). In this regard, economic regulations are subject to a less strict vagueness test because their "subject matter is often more narrow, and because businesses which face economic demands to plan behavior carefully can be expected to consult relevant legislation in advance of action." *Hoffman Estates*, 455 U.S. at 498, 102 S.Ct. at 1193.

Defendants assert that the penal nature of punitive damages warrants a constitutional scrutiny of the underlying standard similar to that performed when criminal laws are reviewed under the void-for-vagueness doctrine. Plaintiff contends otherwise, arguing that defendants are involved in the commercial activity of selling a product, conduct which is not constitutionally protected, and urges the court to apply a less strict vagueness test in reviewing New Jersey's standard for awarding punitive damages. The court need not decide this issue, however, because it finds that the standard set forth by the New Jersey Supreme Court for awarding punitive damages passes constitutional muster even under the stricter vagueness test applied to criminal statutes and laws which interfere with the exercise of constitutionally-protected activities.

Defendants' attempt to equate the New Jersey standard for awarding punitive damages with the abstract "misconduct" and "reprehensible misconduct" standards rejected as too vague to meet due-process requirements under the fourteenth amendment by the United States Supreme Court in *Giacco v. Pennsylvania*, 382 U.S. at 404, 86 S.Ct. at 521, is perplexing. In *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 49, 477 A.2d 1224 (1984), the New Jersey Supreme Court recently reiterated its "commitment that punitive or exemplary damages can be awarded to punish *aggravated misconduct* by the defendant to deter him and others from repeating it"; however, in *Nappe* and in *Fischer, supra*, the state supreme court clearly articulated the type of "misconduct" required to support a punitive damage award (emphasis added). In *Fischer*, the court stated:

> The type of conduct that will warrant an award of punitive damages has been described in various ways. The conduct must be "wantonly reckless or malicious. There must be an intentional wrongdoing in the sense of an 'evil minded act' or an act accompanied by a wanton and wilfull disregard of the rights of another".... "[T]he requirement may be satisfied upon a showing that there has been a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to consequences." ... However one describes the conduct that will justify punitive damages, one thing is clear: "The key to the right to punitive damages is the wrongfulness of the intentional act."

103 N.J. at 655, 512 A.2d 466 (citations omitted).

Under the void for vagueness doctrine, a law fails to meet the requirements of the due process clause only "if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." *Giacco*, 382 U.S. at 402–03, 86 S.Ct. at 520–21. The above standard does not leave it to a jury to decide what type of "misconduct" is needed before punitive damages may be assessed; rather, it clearly defines the kind of conduct which is sufficient to serve as a predicate for the imposition of punitive damages. Moreover, there is nothing vague or abstract about the terms employed by the state court in its definition. Terms and phrases such as "wilfull," "wantonly reckless," "intentional" and "deliberate act or omission with knowledge of a high degree of harm and reckless indifference to consequences" are certainly open to easy comprehension by the reasonable person or juror.

The United States Supreme Court's decision in *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), puts to rest any question regarding the vagueness of this standard. In *Smith v. Wade*, a § 1983 defendant challenged the propriety of a punitive damage award grounded on a "recklessness or callous indifference" standard as based on too uncertain a standard to achieve deterrence rationally and fairly. 461 U.S. at 49, 103 S.Ct. at 1636. The Court clearly rejected defendant's vagueness argument, noting that it adopted the "recklessness" standard over a century ago in *Milwaukee & St. Paul R. Co. v. Arms*, 91 U.S. 489, 23 L.Ed. 374 (1876) for the precise reason that it would serve the need for adequate clarity in and fair application of punitive damage standards. *Id.* Furthermore, as plaintiff correctly points out, the Court employed similar language in setting the standard for the imposition of punitive damages in *Gertz v. Robert Welch, Inc.*, an action which involved the issue of free speech, a constitutionally-protected activity. 418 U.S. at 349, 94 S.Ct. at 3011 (in defamation suits, punitive damages may not be assessed unless there is a show-

ing of knowledge of falsity or reckless disregard for the truth). Like the standards approved by the Supreme Court in *Smith v. Wade, supra,* and *Gertz, supra,* the New Jersey standard implicates only conduct which is intentional or recklessly indifferent.

■ Thus, it is clear, under the New Jersey standard, that only conduct which is particularly egregious will justify an award of punitive damages. *Fischer*, 103 N.J. at 654–55, 512 A.2d 466. Nonetheless, the state supreme court has set forth additional guidelines to be followed by the jury in deciding whether a defendant's conduct is sufficiently egregious to justify an award of punitive damages. Courts hearing asbestos cases have been cautioned to instruct the jury to consider the following:

1. the seriousness of the hazard to the public;

2. the degree of the defendant's awareness of the hazard and of its excessiveness;

3. the cost of correcting or reducing the risk;

4. the duration of both the improper marketing behavior and its cover-up;

5. the attitude and conduct of the enterprise upon discovery of the misconduct; and

6. the defendant's reasons for failing to act.

*Fischer*, 103 N.J. at 672–73, 512 A.2d 466. These added factors serve to narrow further the standard by which jurors examine an asbestos manufacturer's conduct in determining whether to assess punitive damages against it.

Defendants also argue that once the jury has concluded that an award of punitive damages is appropriate, the standard fails to provide adequate guidelines to aid the jury in setting a reasonable amount. Hence, the jury has unfettered discretion to grant punitive damage awards which are excessive and unrelated to plaintiff's actual damages. It is true that the New Jersey Supreme Court has repeatedly declined to set a proportional relationship between compensatory and punitive damages.

*Fischer v. Johns–Manville*, 103 N.J. at 673, 512 A.2d 466; *Nappe v. Anschlewitz, Barr, Ansell & Bonello*, 97 N.J. at 50, 477 A.2d 1224. The state court's refusal to set a ratio between the amount of compensatory damages awarded and the amount of punitive damages awarded arises from the very nature of punitive damages—they are assessed for purposes of punishment and deterrence and, thus, are determined "from the perspective of the defendant rather than of the plaintiff." *See Fischer*, 103 N.J. at 657, 512 A.2d 466 (quoting *Cappiello v. Ragen Precision Indus., Inc.*, 192 N.J.Super. 523, 532, 471 A.2d 432 (App.Div. 1984)). To a lesser degree, punitive damages are also viewed as a means to compensate a plaintiff whose legal harm is immeasurable in a dollar amount. *Nappe*, 97 N.J. at 50–53, 477 A.2d 1224 (punitive damages may be assessed in the absence of compensatory damages in an action grounded on the intentional tort of legal fraud).

Nonetheless, the state supreme court does require that punitive damages bear some reasonable relationship to the actual injury in asbestos litigations. *Levinson v. Prentice–Hall*, 868 F.2d 558, 564–65 (3d Cir.1989); *Fischer*, 103 N.J. at 673, 512 A.2d 466. In addition, the *Fischer* court stated that the following considerations should guide the determination of an appropriate amount:

1. the willfulness of defendant's conduct in cases where compensatory damages are minimal;

2. the profitability of the marketing misconduct, where it can be determined;

3. the amount of plaintiff's litigation expenses;

4. the financial condition of the enterprise and the probable effect the judgment will have on it; and

5. the total punishment the enterprise will receive from other sources.

103 N.J. at 673, 512 A.2d 466. Finally, if an award of punitive damages is "manifestly outrageous" or "grossly excessive," a defendant may seek relief from the trial court, which is expressly authorized to consider prior punitive damages awards in deciding whether to reduce the award or order a new trial on the issue of punitive damages. *Fischer*, 103 N.J. at 670, 512 A.2d 466 (quoting *Cabakov v. Thatcher*, 37 N.J.Super. 249, 260, 117 A.2d 298 (App.Div. 1955)). Thus, contrary to defendant's assertions, jurors do not have unbridled power to "take from the rich to give to the poor" by awarding excessive amounts in punitive damages. Consequently, the court concludes that New Jersey's standard for awarding punitive damages is not void for vagueness.

3. The Fundamental Fairness Requirement Embodied in the Due Process Clause of the Fourteenth Amendment

 Next, defendants point to the thousands of asbestos-related claims for compensatory and punitive damages which have been filed against them nationwide,[5] and assert that, as a result, plaintiff's punitive damages claim should be barred as a matter of law because subjecting a defendant to multiple assessments of punitive damages awards for a single course of conduct violates the fundamental fairness requirement of the due process clause of the fourteenth amendment. Moreover, defendants argue that, in this case alone, an assessment of punitive damages would not be proportional to their respective conduct because, under New Jersey law, defendants may be held liable for punitive damages on a joint and several basis. Last, defendants rely on the "overkill" theory to

---

5. Defendants assert that, as of this date, punitive damages verdicts in excess of $2,000,000.00 have been assessed against Owens–Illinois, although no documentation has been submitted which would indicate how much of this amount actually has been paid. *See* Smith Affidavit, ¶ 6. In addition, counsel for Owens–Corning has attested that one punitive damages judgment, amounting to $1,200,000.00, has been paid on behalf of Owens–Corning. *See* Williams Affidavit, ¶ 5. Finally, Celotex attests, through its corporate comptroller, that approximately $10,000,000.00 in punitive damages have been returned against Celotex in asbestos-related bodily injury cases, and that two punitive damages judgments totaling $175,000.00 have been paid, thus far, on its behalf. *See* Sassone Affidavit, ¶¶ 4, 5.

further their fundamental fairness argument and assert that disastrous economic consequences will flow from repetitive awards of punitive damages. At the very best, defendants contend that the assets of asbestos companies will be depleted to the point that limited funds will be available to pay compensatory awards to future claimants, and at the very worst, defendants predict the inevitable demise, through bankruptcy, of these corporations.

In opposition, plaintiff argues that defendants' underlying premise—that defendants are being punished for a single course of conduct—is faulty. Instead, plaintiff contends that the proofs submitted at trial will show that defendants' conduct spanned decades, during which time they made repeated decisions to ignore the health hazards of asbestos and, thus, committed many egregious acts. Furthermore, plaintiff argues that the "overkill" consequences of multiple punitive damages awards are speculative at best and that this public policy argument is unsupported by any facts. Plaintiff urges the court not to adopt the reasoning that "one award of punitive damages is enough," because to do so would result in eliminating the deterrent effect punitive damages play in protecting consumer safety by allowing manufacturers to calculate their potential liability for this one award into their financial plans. Finally, plaintiff asserts that defendants' contention that the state of New Jersey imposes joint and several liability with regard to punitive damages is unsupported by New Jersey case law.

 The court must reject, at the outset, plaintiff's contention that repeated decisions by asbestos manufacturers to ignore the health hazards created by their products constitute conduct which can be severed into separate acts merely because the conduct may have spanned several decades. Courts which have addressed the

problems connected with the assessment of punitive damage awards in successive mass tort litigations, particularly in asbestos cases, have almost unanimously treated the conduct of asbestos defendants as the same act or series of acts. *See In re School Asbestos Litigation,* 789 F.2d 996, 1004–05 (3d Cir.), *cert. denied,* 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986); *Cathey v. Johns–Manville Sales Corp.,* 776 F.2d 1565, 1571 (6th Cir.1985), *cert. denied,* 478 U.S. 1021, 106 S.Ct. 3335, 92 L.Ed.2d 740 (1986); *Juzwin v. Amtorg Trading Corp.,* 705 F.Supp. 1053, 1061 (D.N.J.1989); *Campbell v. ACandS, Inc.,* 704 F.Supp. 1020, 1022 (D.Mont.1989).[6] Thus, the court's consideration of whether an award of punitive damages in the instant case would violate the fundamental fairness requirement of the due process clause starts from the premise that, although defendants may have caused harm to innumerable plaintiffs, multiple awards of punitive damages subject them to repeated civil punishment for a single course of conduct.

The public policy concerns regarding the effect that multiple punitive damage awards may have on the future viability of the asbestos defendants and their ability to pay later compensatory damage claims had their birth in dicta from *Roginsky v. Richardson–Merrell, Inc.,* 378 F.2d 832 (2d Cir. 1967). In *Roginsky,* the Second Circuit's denial of punitive damages to a plaintiff who suffered cataracts after ingesting a drug used to control cholesterol levels was based on a finding that there was insufficient evidence of misconduct to submit the issue of punitive damages to the jury; however, in dictum, Judge Friendly expressed concern that multiple recovery of punitive damages in mass tort cases like *Roginsky* may result in "overkill" and lead to the eventual demise of the defendant manufacturers, thus shutting the door on compensatory damage awards for subsequent

---

**6.** *But see Neal v. Carey Canadian Mines, Ltd.,* 548 F.Supp. 357, 377–78 (E.D.Pa.1982), *aff'd, Van Buskirk v. Carey Canadian Mines, Ltd.,* 760 F.2d 481 (1985) ("... the Court holds that, as a matter of law, since a product seller owes a separate duty to each individual who is a consumer or user of such a product to refrain from

'outrageous conduct' and, if the defendant exhibits 'outrageous conduct' towards a particular individual through deficiencies in that product which causes injury to that plaintiff, then its course of conduct cannot be characterized as 'the same act' because it is separate and distinct to each individual plaintiff.").

claimants, and ultimately violate the defendants' due process rights. 378 F.2d at 839–42.

Later cases have echoed Judge Friendly's policy concerns, while taking note of the due process problems implicated by permitting unlimited multiple awards of punitive damages against a defendant for injuries arising out of a single course of conduct. *See In re School Asbestos Litigation,* 789 F.2d at 1005 ("... powerful arguments have been made that, as a matter of constitutional law or of substantive tort law, the courts shoulder some responsibility for preventing repeated awards of punitive damages for the same acts or series of acts."); *In re Federal Skywalk Cases,* 680 F.2d 1175, 1188 (8th Cir.), *cert. denied,* 459 U.S. 988, 103 S.Ct. 342, 74 L.Ed.2d 383 (1982) (Heaney, J., dissenting) ("Unlimited multiple punishment for the same act determined in a succession of individual lawsuits and bearing no relation to the defendant's culpability or the actual injuries suffered by victims would violate the sense of 'fundamental fairness' that is essential to constitutional due process."); *In re "Agent Orange" Product Liability Litigation,* 100 F.R.D. 718, 728 (E.D.N.Y. 1983) *mandamus denied,* 725 F.2d 858 (2d Cir.), *cert. denied,* 465 U.S. 1067, 104 S.Ct. 1417, 79 L.Ed.2d 743 (1984) ("There must ... be some limit, either as a matter of policy or as a matter of due process, to the amount of times defendant may be punished for a single transaction."); *In re Northern District of California "Dalkon Shield" IUD Products Liability Litigation,* 526 F.Supp. 887, 899–900 (N.D.Cal. 1981), *rev'd on other grounds,* 693 F.2d 847 (9th Cir.1982), *cert. denied,* 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983) ("A defendant has a due process right to be protected against unlimited multiple punishment for the same act ... simply because overlapping damage awards violate that sense of 'fundamental fairness' which lies at the heart of constitutional due process.").

The defendants' fundamental fairness argument rests principally on the recent New Jersey District Court decision handed down in *Juzwin v. Amtorg Trading Corp.,* 705 F.Supp. 1053 (D.N.J.1989). In *Juzwin,* the court addressed the precise issue before this court—whether, in the context of mass tort litigation, subjecting defendant asbestos manufacturers to repeated assessments of punitive damage awards deprives them of the fundamental fairness required under the due process clause—and concluded that due process requires that a defendant's liability for punitive damages arising out of the same misconduct be limited. 705 F.Supp. at 1060–65. Hence, the court held that the initial assessment by a factfinder of the amount of punitive damages necessary to deter and punish a defendant's conduct bars all subsequent claims for punitive damages. *Juzwin,* 705 F.Supp. at 1065.

This court does not discount entirely the finding that due process requires that some limit be placed on the amount of punitive damages which can be awarded against a manufacturer for the same culpable conduct; nevertheless, it must reject the easy solution of having the first litigant who reaches the courthouse door preclude all subsequent punitive damages awards to later plaintiffs as producing a harsh and inequitable result. First, although the court agrees that fundamental fairness demands that some safeguards be present to protect defendants in mass tort litigations from the imposition of runaway and disproportionate punitive damage awards, the *Juzwin* decision cites no legal or equitable basis for allowing the first plaintiff who brings a claim to obtain punitive damages, and then, denying punitive damages, as a matter of law, to all those who follow. Even the *Roginsky* court, which sparked the concerns which defendants raise today, recognized the inequities inherent in such a solution:

> We know of no principle whereby the first punitive award exhausts all claims for punitive damages and would thus preclude future judgments.... Neither does it seem either fair or practicable to limit punitive recoveries to an indeterminate number of first-comers, leaving it to some unascertained court to cry,

"Hold, enough," in the hope that others would follow. 378 F.2d at 839–40.

Second, this approach ignores the role that punitive damages play in promoting consumer safety by encouraging manufacturers to take steps to make their products safer. With respect to plaintiffs, punitive damages provide an incentive to bring suit against manufacturers who place unsafe products on the market with deliberate or reckless disregard for public safety, when a compensatory award for the harm caused would be outweighed by the skyrocketing costs of litigation. *See Fischer v. Johns–Manville Corp.*, 103 N.J. at 658, 512 A.2d 466. From the defendants' perspective, a rule which would permit the recovery of only one punitive damages award, regardless of the countless number of plaintiffs who are harmed by defendant's tortious conduct, will serve to eliminate the deterrent effect punitive damages have. As with compensatory damages, manufacturers will then be able to predict, within certain limits, the amount of punitive damages which may result and factor this figure into a cost-benefit analysis when deciding whether to market a particular product. *See Fischer v. Johns–Manville Corp.*, 103 N.J. at 664, 512 A.2d 466. Rather than remove dangerous products from the market, manufacturers may instead accept the risk of paying limited punitive damages. *Neal v. Carey Canadian Mines, Inc.*, 548 F.Supp. at 376.

The *Juzwin* decision apparently was based, at least in part, on dissatisfaction with the alternative methods available to cope with the problems created by cumulative punitive damages awards in mass tort litigation. Based on the Third Circuit's holding, in *In re School Asbestos Litigation*, 789 F.2d at 1006, that it was unlikely that any class could be certified in the asbestos context for the purpose of determining awards of punitive damages, the court dismissed class certification as an available means of limiting the amount of punitive damages imposed on asbestos defendants. The court further found the defendants' option of submitting evidence of prior awards to the jury to persuade them

to reduce their verdict by the amounts of the earlier awards to be an equally unattractive and unrealistic alternative in light of the possible prejudicial effect which this information may have on jurors. Nonetheless, while the court is aware that the latter solution lacks some appeal, it is certainly far more acceptable an approach than arbitrarily barring all but the first litigant at the courthouse door from an award of punitive damages.

The court fears that the *Juzwin* solution to the problem of multiple punitive damages awards in mass litigation is impracticable as well as arbitrary. It assumes that the first jury to award punitive damages will base the amount awarded on the overall harm caused to all the victims of asbestos inhalation and, thus, the asbestos manufacturers will be adequately punished for their misconduct by the size of the first award. This assumption is unrealistic, especially in New Jersey state courts and federal district courts sitting in diversity since, under the New Jersey standard for punitive damages, jurors must be instructed that, although they may take into account the overall seriousness of the hazard to the public, the punitive damage award should bear some reasonable relation to plaintiff's actual injury. *Levinson v. Prentice–Hall, Inc.*, 868 F.2d at 564–65; *Fischer*, 103 N.J. at 673, 512 A.2d 466. On the other hand, even if a New Jersey jury were to ignore the mandate of the New Jersey Supreme Court and impose a punitive damage award which is the product of injuries to all present and potential plaintiffs, the *Juzwin* opinion provides no reason for allowing the first plaintiff in line to be the sole beneficiary of a windfall award which is based more on the harm caused to others than on his own injury.

Because of the vast numbers of asbestos personal injury and property damage suits which have been and are expected to be filed in state and federal courts throughout the country, it has been said that "the asbestos scene [presents an] unparalleled situation in American tort law." *In re School Asbestos Litigation*, 789 F.2d at 1000. The problems associated with

awarding exemplary damages in successive asbestos litigations are thus nationwide problems and call for a uniform solution. Resolution of this problem is better dealt with either by the federal legislature or through legislation on a state-by-state basis, with the proviso that all states adopt a uniform system for handling these claims, than on the judicial level.[7] *Cathey v. Johns–Manville Sales Corp.*, 776 F.2d at 1569–70; *Moran v. Johns–Manville Sales Corp.*, 691 F.2d 811, 817 (6th Cir.1982); *Roginsky*, 378 F.2d at 841; *Fischer*, 103 N.J. at 669, 512 A.2d 466; Seltzer, *Punitive Damages in Mass Tort Litigation: Addressing the Problems of Fairness, Efficiency and Control*, 52 Fordham L.Rev. 37, 56–57 (1983).

The record before this court does not indicate that the defendants in this action are in danger of having their due process rights violated, should the jury see fit to award plaintiff punitive damages. Thus far, it appears that Celotex has paid a total of $175,000.00 in punitive damages judgments, a figure which hardly seems excessive in light of the $15,500,000.00 in compensatory damages which Celotex asserts has been assessed against it to date. Owens–Corning has paid one punitive damages award, amounting to $1,200,000.00; again, an amount which cannot be labeled disproportionate to the $547,914,408.00 in compensatory damages which it asserts have been paid thus far. Moreover, although the affidavit submitted by Owens–Illinois is artfully worded, what the court can glean from it is that, while punitive damages in the amount of $2,000,000.00 have been assessed against it, none have actually been paid at this time. Finally, the defendants are adequately protected by available judicial controls if the jury decides to award excessive and greatly disproportionate pu-

nitive damages. It is thus unnecessary for the court to take the issue of the propriety of an award of punitive damages from the trier of fact.

■ Defendants also argue that any assessment of punitive damages in this case will violate their due process rights because, under New Jersey law, defendants may be held jointly and severally liable for punitive damages, thus permitting an award of punitive damages which may not be proportional to their conduct. In support of this contention, defendants rely on the decision by the New Jersey Appellate Division in *State Dep't of Envtl. Protection v. Ventron Corp.*, 182 N.J.Super. 210, 440 A.2d 455 (App.Div.1981), *aff'd as modified*, 94 N.J. 473, 468 A.2d 150 (1983). Defendants' contention finds no support in New Jersey case law. *Ventron* involved the apportionment of the cost of cleanup and removal of mercury contaminants under the New Jersey Spill Compensation and Control Act. The court merely held that under general tort principles, damages for a total injury or loss (or compensatory damages) can be assessed against two or more tortfeasors whose wrong was a substantial factor in causing the injury and where the injury or loss cannot be subdivided and liability apportioned. *Ventron*, 182 N.J.Super. at 222, 440 A.2d 455. There is nothing in the decision which supports a finding that defendants are also jointly and severally liable for punitive damages in this state.

Finally, defendants raise several public policy concerns in an effort to persuade the court to deny plaintiff's request for punitive damages as a matter of law. Primarily, they argue that permitting cumulative damages awards in asbestos litigation will deplete their ability to pay future awards for compensatory claims, and may even-

---

7. Although the *Juzwin* opinion also cries out for a legislative solution to this problem, the decision, if followed in this district, effectively accomplishes what the state supreme court has endeavored to avoid—deprive citizens of New Jersey of punitive damages awards which are currently available to citizens of other states in like situations. *See Fischer*, 103 N.J. at 666–67, 512 A.2d 466. Concern with denying their citizenry the benefits available to litigants in other

jurisdictions has been a driving force in the refusal of many states to even set a cap on or a proportional ratio to claims for punitive damages. *See In re School Asbestos Litigation*, 789 F.2d at 1001; *Jackson v. Johns–Manville Sales Corp.*, 781 F.2d 394, 405 (5th Cir.), *cert. denied*, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986). There is no guarantee that other jurisdictions will follow Judge Sarokin's lead.

tually destroy the corporations. Plaintiffs argue that the forecast of excessive punitive damages awards leading to the defendants' demise is speculative at best and should not be credited by the court.

The court is cognizant of its role as a federal court sitting in diversity: whether these policy arguments present persuasive and valid concerns is a matter which should be decided by the New Jersey Supreme Court, and this court must work within the framework of New Jersey state decisions on these issues. *Gogol v. Johns–Manville Sales Corp.*, 595 F.Supp. 971, 975 (D.N.J. 1984). In *Fischer v. Johns–Manville Corp.*, the New Jersey Supreme Court addressed all of these arguments and found them to be an insufficient basis upon which to deny plaintiffs, in asbestos suits, the right to seek punitive damages. There, the asbestos defendants raised the identical "overkill" arguments advanced here, as well as some others, and the state court rejected them as speculative. 103 N.J. at 665, 512 A.2d 466. ("The amount of punitive damages and the determination that they would cause insolvency that could be avoided in their absence are so speculative as to foreclose any sound basis for judicial decision.")

Moreover, while the "overkill" argument is not entirely without merit, defendants have not proffered any factual documentation which would persuade the court to reject the reasoning in *Fischer* that defendants' fears are more speculative than real. There is nothing before the court which indicates that any of the defendants in this case are facing bankruptcy or that bankruptcy, if it should occur, will result more from the punitive damages awarded than the countless awards for compensatory damages. The court concludes that neither due process nor the policy concerns raised by defendants preclude the submission of the issue of punitive damages to a jury.

#### 4. The Eighth Amendment's Proscription Against Excessive Fines

Defendants base their next constitutional claim on the eighth amendment.[8] They argue that the punishment meted out by permitting multiple awards of punitive damages in asbestos suits is disproportionate to the single course of conduct giving rise to the claims, and thus, is violative of the eighth amendment's prohibition against excessive fines. Plaintiff disputes the applicability of the eighth amendment to civil actions and, alternatively, argues that, even if the eighth amendment does protect defendants in civil suits from the assessment of fines which are disproportionate to their conduct, the conduct of the defendants in this case (marketing a product known to cause serious bodily injuries for decades) was particularly egregious, thus justifying the imposition of a severe penalty.

As noted earlier, on December 5, 1988, the Supreme Court granted certiorari, in *Kelco Disposal, Inc. v. Browning–Ferris Indus.*, to decide whether the imposition of punitive damages which are 100 times greater than plaintiff's actual damages is violative of the eighth amendment. 845 F.2d 404 (2d Cir.1988), *cert. granted,* —— U.S. ——, 109 S.Ct. 527, 102 L.Ed.2d 559 (1988). Subsequent to the filing of defendants' motion, the Supreme Court rendered its decision in *Browning–Ferris,* —— U.S. ——, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989). The issue of the applicability of the eighth amendment to purely civil suits has been resolved. The Court unequivocally held that the excessive fines clause of the eighth amendment does not apply to punitive damages awards between private parties and, thus, does not act to restrict such awards where the government has not prosecuted the suit or cannot share in the recovery. *Browning–Ferris,* —— U.S. at ——, 109 S.Ct. at 2915–2921. Defendants' argument cannot survive this decision. It is clear that the eighth amendment does not bar plaintiff's punitive damages claim.

#### 5. The Double Jeopardy Clause of the Fifth Amendment

Finally, defendants contend that the imposition of punitive damages in this case is

---

**8.** The eighth amendment to the United States Constitution provides:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

barred by the double jeopardy clause of the fifth amendment. The fifth amendment to the Constitution provides, in part, "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." It has been said that the guarantee against double jeopardy consists of three separate constitutional protections. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

Defendants argue that the protections of the double jeopardy clause are not limited to criminal proceedings. Rather, the proper inquiry is not whether the proceeding in question is labelled "criminal" or "civil," but whether the challenged sanction is punitive in purpose. Since punitive damages are designed to punish the wrongdoer and to deter others from like conduct, they are penal in nature. Thus, defendants argue that the imposition of multiple awards of punitive damages in successive litigations exposes them to double jeopardy, in violation of the fifth amendment.

This argument is foreclosed by the United States Supreme Court's recent decision in *United States v. Halper*, 490 U.S. ——, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). In *Halper*, the Supreme Court held that the government cannot, under the double jeopardy clause, criminally prosecute a defendant, impose a criminal penalty upon him and then bring a separate civil action based on the same conduct and receive a judgment which is not rationally related to the losses suffered. 490 U.S. at ——, 109 S.Ct. at 1902. Thus, under certain circumstances, civil penalties do constitute punishment for the purpose of the double jeopardy clause, and the test urged by defendants for determining the applicability of the double jeopardy clause to civil proceedings is indeed the correct one in suits involving government-sought sanctions. *See Halper*, 490 U.S. at ——, 109 S.Ct. at 1901–02.

Nonetheless, in *Halper*, the Court expressly held that the "protections of the Double Jeopardy clause are not triggered by litigation between private parties." 490 U.S. at ——, 109 S.Ct. at 1903. Since the instant lawsuit is a purely civil action instituted by a private litigant to vindicate a private right, the punitive damages sought here do not fall within the purview of the fifth amendment's protection against double jeopardy. Consequently, the court finds that the defendants will not be subjected to double jeopardy by the imposition of punitive damages in this action.

## II.

Defendants have moved, in the alternative, for a stay pending the Supreme Court's decision in *Browning–Ferris Indus. v. Kelco Disposal, Inc., supra,* and/or joinder of the Johns–Manville Settlement Vehicle as a defendant to this suit. First, defendants argue that a stay of this action pending the Supreme Court's decision in *Browning–Ferris* is warranted because that decision will substantially affect or dispose of the issue of punitive damages in this action and that plaintiff will not be prejudiced by the delay because he has already been compensated for his injuries. Defendants' request for a stay to await the Supreme Court's decision in *Browning–Ferris*, however, has been rendered moot by the issuance of that opinion just last week. Next, defendants argue that joinder of the Johns–Manville Settlement Vehicle is necessary to effect complete relief among the parties and to avoid duplicative litigation of the same issues, thus justifying a stay of this action until joinder is possible. Both arguments are completely meritless.

The power to stay a proceeding is committed to the broad discretion of the district court. *Gold v. Johns–Manville Corp.*, 723 F.2d 1068, 1077 (3d Cir.1983); *Bechtel Corp. v. Local 215, Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir.1976). This power is said to be "incidental to the power inherent in every court to control the disposition of the causes on its docket with the economy of time and effort for itself, for counsel, and for litigants." *Landis v.*

**288**

*North American Co.,* 299 U.S. 248, 254–55, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936). To promote ·fair adjudication, the district court must weigh the competing interests of the parties and maintain an even balance. *Landis, supra.* The moving party, however, must demonstrate "'a clear case of hardship or inequity' if there is 'even a fair possibility' that the stay would work damage on another party." *Gold v. Johns–Manville Corp.,* 723 F.2d at 1075–76 (quoting *Landis v. North American Co.,* 299 U.S. at 255, 57 S.Ct. at 166).

■ Defendants argue that this action should be stayed to allow them to join the Johns–Manville Settlement Vehicle, so that the jury can properly allocate Johns–Manville's portion of liability as a culpable joint tortfeasor, thus avoiding a second, duplicative trial by defendants to seek contribution from Johns–Manville. This argument is completely without merit. I am amazed that the defendants would have the temerity to make such an argument, in light of the fact that the liability phase of this litigation ended almost a year ago. Moreover, as defendants candidly admit (in support of one of the numerous other arguments raised in their motion), the Settlement Vehicle effectively precludes punitive damages claims against Johns–Manville (*see* Brief in Support of Defendants' Motion for Summary Judgment or Stay of Trial at 32). Thus, since there is no valid reason for joining the Johns–Manville Settlement Vehicle, there is no valid reason for staying this action for that purpose.

This lawsuit was commenced seven years ago and has tiredly dragged on since then. Plaintiff has a right to see a timely resolution of his cause of action. The defendants have not demonstrated that inconvenience, much less hardship, will result to them if it is allowed to proceed. As a result, the court finds that the balance of hardship weighs in plaintiff's favor. Further delay will not be tolerated.

Accordingly, for the reasons stated above, defendants' motions for summary judgment or, in the alternative, for stay of trial, are both denied. An order accompanies this opinion. No costs.

ORDER

This matter having been opened to the court on motion of the law firm of McCarter & English, by Andrew T. Berry, Esq., on behalf of defendants The Celotex Corporation and Owens–Illinois Corporation and the law firm of Horn, Kaplan, Goldberg, Gorny & Daniels, by Donald M. Kaplan, Esq., on behalf of defendant Owens–Corning Fiberglas Corporation, for summary judgment on plaintiff's punitive damages claim, pursuant to Fed.R.Civ.P. 56 or, in the alternative, for a stay of trial on this matter; and the court having carefully considered the papers submitted by counsel in support thereof and in opposition thereto; and for good cause shown,

It is on this 5th day of July 1989,

ORDERED that defendants' motion for summary judgment be and hereby is denied; and it is further

ORDERED that defendants' motion for a stay of the trial on plaintiff's punitive damages claim be and hereby is denied.